## AFFIDAVIT

I, STEPHEN HARRISON, being duly sworn, declare and state as follows:

### I. INTRODUCTION

1. I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), and have been so employed since January 2019. I am currently assigned to the FBI, Los Angeles Division, Riverside Resident Agency, in Riverside, California, where my duties include the investigation of bank fraud, wire fraud, and money laundering.

2. I have received 21 weeks (approximately 840 hours) of instruction in the fundamentals of law, ethics, behavioral science, interviewing, report writing, firearms, surveillance, defensive tactics, and case management at the FBI Academy in Quantico, Virginia. Through the course of my employment with the FBI, I have participated in a variety of investigations, including drug trafficking, violent crimes, fugitives, bank fraud, wire fraud, identity theft, money laundering, and public corruption.

3. As an SA, I have received instructions in the identification, collection, and preservation of evidence, photography, latent print collection, and crime-scene investigations. I have also completed hundreds of hours of criminal investigations, including compiling information; interviewing victims, witnesses, and suspects; and collecting evidence to support the filing of criminal complaints and search warrants.

4. During the course of my investigations, I have interviewed witnesses, conducted physical surveillance, participated in the execution of arrest and search warrants, and reviewed various forms of evidence including telephone call detail records, bank records, invoices, photographs, recorded telephone calls and other miscellaneous financial documents. Through my training, education, and experience, I have become familiar with a variety of fraud schemes.

5. In addition to my formal training and personal experience, I have learned from and worked alongside numerous senior FBI agents with years of experience in various criminal investigations including, but not limited to, corporate and securities fraud, mail fraud, wire fraud, securities fraud, and insider trading. Throughout my experiences with these senior agents, I have received guidance, training, and hands-on experience in various investigative techniques including, but not limited to, interviewing, surveillance, financial analysis, and other

investigative techniques, including with respect to the identification and tracing of illicit proceeds.

6. The facts set forth in this affidavit are based upon my personal observations, my training and experience, documents and records that were collected and reviewed in the course of this investigation, information that was obtained from interviewed witnesses, and information gathered by other law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II.    PURPOSE OF AFFIDAVIT

7. This affidavit is made in support of an application to seize the following funds on deposit in the following bank account:

- Funds up to $108,610.82 in Middlesex Federal Savings, F.A. bank account number 99068457, held in the name of Lucas Whitehill ("SUBJECT ACCOUNT").

8. The funds in the SUBJECT ACCOUNT ("SUBJECT FUNDS") are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and (b) because there is probable cause to believe that said funds constitute or were derived from proceeds traceable to one or more violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1028A (Aggravated Identity theft), which are specified unlawful activities as defined in 18 U.S.C. § 1956(c)(7). Specifically, probable cause exists that SUBJECT FUNDS represent proceeds from a fraud scheme by which ALEXANDER SAYEGH ("SAYEGH"), knowingly submitted, or caused others to submit, fraudulent loan applications to the Small Business Administration ("SBA") through participating banks, to obtain funds authorized by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The SBA and participating banks relied on the information contained in the fraudulent loan applications to deposit funds into the SUBJECT ACCOUNT.

9. To the extent that the SUBJECT FUNDS are not the actual monies traceable to or involved in the illegal activities identified herein, there is probable cause to believe that said funds are identical property found in the same account(s) as the property involved in the illegal activities, rendering them subject to forfeiture pursuant to 18 U.S.C. § 984.

10. In addition, the SUBJECT FUNDS are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(7) and (b)(1), and 21 U.S.C. § 853(f), because there is probable cause to believe that the SUBJECT FUNDS would, in the event of conviction on the alleged underlying wire fraud and bank fraud offenses, be subject to criminal forfeiture, and an order under 21 U.S.C. § 853(e)(providing for restraining orders and injunctions) would not be sufficient to assure the availability of the property for forfeiture.

### III. BACKGROUND

#### A. The Paycheck Protection Program

11. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

12. In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. One such certification requires the applicant (through its authorized representative) to affirm that "[t]he [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges." In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

13. A business' PPP loan application is received and processed, in the first instance, by a participating financial institution, then transmitted for further review to the SBA to assess

the applicant's eligibility.  If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies.

14.     PPP loan proceeds must be used by the business on certain permissible expenses – payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and uses at least approximately 60% of the PPP loan proceeds on payroll expenses.

### IV.   STATEMENT OF PROBABLE CAUSE

#### A.     Summary of Scheme

15.     Starting as early as June 2020, SAYEGH began submitting fraudulent PPP loan applications to PPP loan participating banks using the names and personal identifying information of individuals without their knowledge and/or authority[1] (herein referred to as "Identify Theft Victims").  It was not until May 2021, when a bank investigator flagged an account that SAYEGH had opened, that the FBI, in conjunction with the Federal Deposit Insurance Corporation – Office of Inspector General, and the Small Business Administration – Office of Inspector General, began to investigate SAYEGH's activities.

16.     Through its investigation, which included a review of bank records, records acquired during the execution of a search warrant at SAYEGH's residence, and interviews with the affected Identify Theft Victims, the FBI discovered that SAYEGH would open bank accounts in the names of the Identify Theft Victims, then use those accounts and the personal information of the Identify Theft Victims, which he combined with falsified supporting information and documents, to apply for PPP loans.  The falsified supporting documents included altered or false driver's licenses, passports, tax documents and bank statements.  The Identify Theft Victims were unaware of the existence of the accounts or the loan applications.  In instances where the SBA funded a loan, SAYEGH transferred funds from the victim account to other accounts he controlled, or simply spent the funds on, for example, personal expenses and products, like firearms and electronics.

---

[1] The investigation has not yet revealed how SAYEGH gets access to the Victims' personal identifying information.

17. The SUBJECT ACCOUNT is connected to at least one of three PPP loan applications SAYEGH submitted in the name of one specific victim, Lucas Whitehill ("Whitehill"). The FBI interviewed Whitehill as part of this investigation and concluded that he did not participate in the SAYEGH fraudulent PPP loan application scheme. Evidently, the SBA approved all three of these PPP loan applications that SAYEGH submitted in Whitehill's name. However, only a portion of the approved funds, namely $108,610.82, was deposited into SUBJECT ACCOUNT, as described below.

18. Based on witness interviews I have conducted, my review of documents obtained from third parties, conversations with other law enforcement officers, and publicly filed documents, I know the following:

### B. Middlesex Federal Savings, F.A. Flags an Account

19. In May 2021, a Bank Secrecy account manager at Middlesex Federal Savings, F.A. ("Middlesex Bank"), reported to the FBI that it flagged one of its customer accounts opened under the name of Lucas Whitehill for possible PPP loan fraud. Middlesex Bank is an FDIC insured financial institution in Somerville, Massachusetts. The Whitehill account, *i.e.* the SUBJECT ACCOUNT, was opened by someone using a computer application provided by Novo Platform, Inc., (the "Novo App") an independent tech company that promotes itself as a mobile banking platform that brings "small business banking into the modern age with easy-to-use tools for businesses on the go," and enables users to "apply for an account online in minutes."

20. The Middlesex Bank account manager highlighted multiple red flag transactions in the SUBJECT ACCOUNT including: 1) approximately $13,000 in transactions for firearms and ammunition; 2) outgoing transfers of funds to cryptocurrency sites totaling approximately $25,000; and 3) outgoing transfers of funds through Cash App[2] totaling approximately between $20,000 and $30,000 within weeks of the receipt of PPP loan funds into the SUBJECT ACCOUNT. The account manager also reported that the SUBJECT ACCOUNT was associated with three separate PPP loan applications.

21. Documents submitted to Middlesex Bank through the Novo App to create the SUBJECT ACCOUNT listed two contact addresses for the account owner, one at 11030 Seven

---

[2] Cash App is a mobile payment service developed by Square, Inc. that allows users to transfer money to one another using a mobile phone app.

Pines Drive, Alta Loma, California 91737 ("11030 Seven Pines drive"), a residence, and another at 1851 Kiowa Avenue #1013, Lake Havasu City, Arizona 86403, a Staples office supply store. The Middlesex Bank account records further listed Whitehill's contact telephone numbers as (909) 285-8217 and (951) 503-9643.[3]  According to Verizon Wireless records that I reviewed, Nehad Sayegh is the subscriber for (909) 285-8217, and the subscriber billing address is 11030 Seven Pines Drive.  Using FBI internal databases I discovered that 11030 Seven Pines Drive is also associated with SAYEGH, and therefore Nehad Sayegh is likely a family member.

        **C.**      **Review of the Middlesex Bank PPP Loan Applications**

The PPP Loan Application of April 8, 2021 - PPP Application x3006

      22.      On or about April 8, 2021, someone purporting to be Whitehill initiated PPP Loan application number 28463006 ("PPP Application x3006") in Whitehill's name seeking a loan of $108,610.82.  The application documents state that Whitehill operates a sole proprietorship, established on September 15, 2018, and has seven employees who work in the "Limited-Service Restaurants" industry.  The application further identified Whitehill as the principal and used Whitehill's actual Social Security Number.  The SBA approved the loan and Middlesex Bank disbursed $108,610.82 in PPP loan funds to the SUBJECT ACCOUNT on April 9, 2021.  According to Middlesex Bank records I reviewed, the address provided for the SUBJECT ACCOUNT was 11030 Seven Pines Drive – the same address associated with SAYEGH and other fraudulent loan applications that are still under investigation.

The PPP Loan Application of April 14, 2021 - PPP Application x2547

      23.      On or about April 14, 2021, someone purporting to be Whitehill initiated a second PPP Loan application in Whitehill's name seeking a "second draw" PPP loan for $108,610.82 from Middlesex Bank pursuant to a program that allows eligible borrowers who previously received a PPP loan to apply for a second PPP loan with the same general loan terms as their first PPP loan.  The SBA assigned the second application number 29202547 ("PPP Application x2547).  Like the first PPP Application x3006 (discussed above), the application documents

---

[3] Per T-Mobile records, there is no subscriber associated with (951) 503-9643.  It is possible that this number may be associated with a pre-paid phone.

identified Whitehill as the principal of a sole proprietorship, this time established on September 1, 2018, that had seven employees in the "Limited-Service Restaurants" industry. The application used Whitehill's actual Social Security Number. The telephone number on the application was (909) 500-8292.

24.  Middlesex Bank initially approved the "second draw" SBA loan; however, it ultimately withheld the funds due to the suspicious "red flag" transactions identified on the account.

### D. Middlesex Bank Loan Applications Appear to Be Supported by False Documentation

25.  I reviewed the documents that Middlesex Bank provided related to the PPP loan application. The file included a request by Middlesex Bank for additional supporting documentation it needed from the applicant for the second loan application because the account had been flagged for fraud. Based on my review of these additional supporting documents, I believe the documents were altered or falsified in an attempt to assume Whitehill's identity and obtain the PPP loans in Whitehill's name. The documents provided included a falsified California driver's license, a U.S. passport, and a Wells Fargo account statement each bearing Whitehill's name.

(a)  <u>The Driver's License</u>. At my request, FBI Operational Support Technician Alex Vu searched the California DMV database and obtained a copy of Whitehill's California driver's license. From that, he confirmed that Whitehill is a real person and a California resident. However, the information shown in the DMV database for Whitehill's actual license did not match the information on the version submitted to Middlesex Bank in support of the fraudulent loan application. Specifically, the falsified Whitehill driver's license had a different driver's license number, address, eye color, hair color, weight, height, signature, and photograph[4] than what appears on Whitehill's true DMV records.

(b)  <u>The Passport</u>. As part of its investigation, the FBI met with Whitehill in July 2021. During the interview, Whitehill supplied his actual United States passport for review. The falsified version of Whitehill's U.S. passport submitted to Middlesex Bank had a different

---

[4] The investigation has not yet identified the individuals pictured in the falsified passport and driver's license photographs.

date of issue, date of expiration, passport number, and a different person's photo, than Whitehill's actual U.S. passport.

    (c) <u>The Bank Statements</u>.  The loan applicant for both PPP loan applications, *i.e.* x3006 and x2547, submitted bank statements from a Wells Fargo Bank account ending in 1433 ("WFB x1433"), held in the name of Whitehill Credit Logistics and the victim Whitehill. The WFP x1433 statements were dated February and March 2020.  I then sought bank statements directly from Wells Fargo Bank for the same account number and the same reporting months. The documents I received from Wells Fargo Bank had SAYEGH's name had the same account number (i.e. the one ending in 1433) and had 11030 Seven Pines Drive as the mailing address for the account holder.  I also noticed that the transaction dates, descriptions, and transaction amounts for withdrawals and deposits in SAYEGH's bank statements closely matched those shown on the bank statements submitted to Middlesex Bank on behalf of Whitehill Credit Logistics.  Where I found discrepancies, it appeared that transactions on the WFB x1443 documents submitted to Middlesex Bank had been carefully altered to omit references to SAYEGH's last name, for example:

    (i) A $500 transaction on SAYEGH's bank statements dated February 1, 2021, is described as "Zelle from Sayegh Reema on 01/30 Ref# Pp09QM2Ngl."  The corresponding transaction which appears on the Whitehill Credit Logistics bank statement shows the same $500 transaction, with the same posting date, but altered to read as "Zelle from *Whitehill* Reema on 01/30 Ref# Pp09QM2Ngl."  (Emphasis added) The reference numbers, dates, and transaction amounts are identical for both transactions, but the fraudulent version replaces SAYEGH's name with the victim Whitehill's name. *See* Figure 1, below.

[*Figure 1*: Transaction Comparison of February Zelle Payment]

  *SAYEGH bank statement:*

| 2/1 | Zelle From Sayegh Reema on 01/30 Ref # Pp09QM2Ngl | 500.00 |
|---|---|---|

  *WFB x1443 bank statement:*

| 2/1 | Zelle From Whitehill Reema on 01/30 Ref # Pp09QM2Ngl | 500.00 |
|---|---|---|

(ii) A transaction for $227.65, dated March 16, 2020, appears as on SAYEGH's bank statements appears as "Mb Auto Finance Loan Pmt 210312010157072861001 *Sayegh* Alexande." (Emphasis added). A nearly identical $227.65 transaction on the Whitehill Credit Logistics bank statement appears as "Mb Auto Finance Loan Pmt 210312010157072861001 *Whitehill* Alexande." (Emphasis added). As with the prior example, the transaction numbers, dates, and amounts are identical, but the altered, fraudulent version replaces SAYEGH's name with the victim Whitehill's name. *See* Figure 2, below. Accordingly, I believe the Wells Fargo Bank statements were altered to change any reference of the last name SAYEGH to Whitehill.

[*Figure 2*: Transaction Comparison of March Mb Auto Transaction]

*SAYEGH bank statement:*

| 3/16 | Mb Auto Finance Loan Pmt 210312 010157072861001 Sayegh Alexande | 227.65 | 2,760.70 |

*WFB x1443 bank statement:*

| 3/16 | Mb Auto Finance Loan Pmt 210312 010157072861001 Whitehill Alexande | 227.65 | 2,760.70 |

(d) <u>Tax Documents</u>. My investigation led me to discover an earlier PPP loan application submitted to the SBA through another participating bank in Whitehill's name that dated from June 4, 2020 (application number 18993621). Among the documents provided in support of this prior PPP loan application was a federal "Schedule C" bearing the victim's name Lucas Whitehill, and a 2019 IRS Form-1040 for Whitehill listing his spouse as Marie Whitehill. Based on my training and experience, I believe that these tax documents are fraudulent. First, the submitted Schedule C form includes dashes and formatting irregularities throughout that are inconsistent with authentic tax forms, for example, the notation of zero dollars as "-0-" and misaligned figures on the document. Second, the submitted Form-1040 lists Marie Whitehill as Whitehill's spouse, but I confirmed in a July 2021, interview with Whitehill that he is unmarried.

E. **Interview of Whitehill**

26. On July 16, 2021, FBI SA Jazmin Vidana and I interviewed Whitehill in person. During the interview, I showed Whitehill various documents pertaining to the PPP loan

9

applications that were submitted using Whitehill's personal identifying information, including Whitehill's name, social security number, date of birth, etc. After looking at the various documents, Whitehall stated the following:

(a) Whitehill did not apply for any PPP loans, and does not own or manage a company called CREDIT LOGISTICS, WHITEHILL CREDIT LOGISTICS, or any other such company.

(b) The PPP loan applications' contact telephone number, (909) 201-6910, does not belong to Whitehill. Similarly, the Yahoo email address, lucas.White91@yahoo.com, listed on the documents does not belong to Whitehill.

(c) Whitehill has never had a Wells Fargo Bank account or a Middlesex Savings Bank account, nor has he established an account with Novo Bank or Go Bank. Likewise, Whitehill did not purchase any of the items listed on the Wells Fargo Bank statements submitted in support of the PPP loans described above. Whitehill did not purchase and does not own, cryptocurrency, or firearms.

(d) Whitehill is not married.

(e) Whitehill did not personally submit, nor authorize anyone to submit, any tax documents for any PPP loans, and he did not recognize any of the tax documents I showed him.

(f) Whitehill did not recognize the driver's license and passport bearing his name that were submitted for the PPP loan. Whitehill presented his true driver's license and U.S. passport to me to and to SA Vidana and they did not match the same identification documents submitted on Whitehall's behalf for the PPP loan applications.

(g) Whitehill did not recognize the address at the 11030 Seven Pines Drive.

(h) After I showed Whitehill a document listing employee names submitted to Middlesex Bank in support of the PPP loan applications (PPP Application x3006 and PPP Application x2547), Whitehill stated he did not submit the document, did not recognize any of the names, and that has he ever had any employees.

27. Whitehill's father, who was present during the interview, provided mail sent to their home address from two financial institutions, Freedom Plus and Goldman Sachs. The correspondence pertained to loans applications from these businesses that someone submitted in Whitehill's name. Whitehill's father also shared mail sent to their home address from the

California Employment Development Department ("EDD") regarding benefits fraudulently claimed for Whitehill.[5] According to Whitehill, Whitehill did not apply for these loans or submit any claim for unemployment benefits.

28. Whitehill told FBI Special Agents that approximately one year ago he received mail at his residence from different companies regarding loans for which Whitehill had supposedly applied. Whitehill called the companies to tell them that Whitehill did not apply for the loans. Because Whitehill suspected that someone was applying for loans in his name, Whitehill contacted Transunion and placed a freeze on his credit report.

### F. Execution of Federal Search Warrant at 11030 Seven Pines Drive

29. On August 18, 2021, United States Magistrate Judge Shashi H. Kewalramani for the Central District of California signed federal search warrant 5:21-MJ-00530, authorizing the search of 11030 Seven Pines Drive. Investigators executed the search warrant on August 19, 2021 and SAYEGH was present. Inside the residence investigators found and seized various documents, including but not limited to: 1) Ally Bank and Chase Bank rejection letters addressed to Whitehill; 2) false driver's licenses in various different names; 3) California Secretary of State documents for Credit Logistics; 4) a Go Bank voided check for a company and individual known to investigators to be another victim in this investigation involving Sayegh; 5) firearms sales receipts; 6) approximately $16,424 in U.S. currency; and 7) numerous silver and gold coins.

### G. Review of the SUBJECT ACCOUNT

30. I reviewed the bank account records for the SUBJECT ACCOUNT for the time period from January 18, 2021 (the account opening date) through May 31, 2021. My observations include the following:

(a) SUBJECT ACCOUNT was opened in the victim Whitehill's name using the address 11030 Seven Pines Drive, associated with SAYEGH.

(b) <u>Deposits into the SUBJECT ACCOUNT</u>. Between January 18, 2021 to May 31, 2021, a total of $167,306.84 was deposited into the account.

---

[5] The investigation has not yet revealed whether SAYEGH is the person behind these other loans in Whitehill's name.

1.      $108,610.82 (or approximately 64% of all deposits), came from the proceeds of the funded PPP Application x3005, described above.

2.      An additional $49,999.00 (or 29% of all deposits), were deposited to SUBJECT ACCOUNT from two additional PPP loans, one referencing the name "Jacob Scott," and another referencing the name "Benworth." Investigators continue to investigate the source and funding of those newly discovered PPP loans, which currently appear similar to the above-described pattern of PPP loan fraud. Based on interviews with bank and identity theft witnesses, in addition to the analysis of PPP loan documents and financial records in this case.

I believe that the $108,610.82 deposited to SUBJECT ACCOUNT constitutes or is derived from proceeds traceable to the PPP loan fraud scheme described above and are proceeds of the approved PPP Application x3005.

(c)     <u>Disbursements from the SUBJECT ACCOUNT</u>. Between January 18, 2021 to May 31, 2021, a total of $82,020.43 was spent from the account. The disbursements included the following transactions.

1.      On or about May 3, 2021, a point of sale ("POS") withdrawal for approximately $224.93 to Shield Arms. Based on records obtained from Shield Arms, it appears that the transaction was for the purchase of three (3) Glock17/22/34/35/19X/45 Magazine Extensions, and three (3) Glock 19/23 Magazine Extensions. The billing/shipping information submitted was for SAYEGH, at 11030 Seven Pines Drive, and telephone number (909) 285-8217. Shield Arms refunded the purchase and did not fulfil the order due to California state restrictions on magazine capacities.

2.      On or about April 30, 2021, a POS withdrawal was made at Stealth Arms for approximately $1,587.51. Based on records I received from Stealth Arms, the April 30, 2021 transaction was for the types of firearms: One (1) 9mm commander bobtail build kit with checkered front strap and black finishing on slide and frame; One (1) Phantom Jig; Four (4) 9mm magazines. The shipping/billing was for the alias "Matthew

Sayegh" located at 11030 Seven Pines Drive, and contact email address alexsayegh91@gmail.com.[6]

3. On or about May 3, 2021, a POS withdrawal at Ammunition Depot was made for approximately $2,459.65 for additional firearms purchases. I received records from Ammunition Depot showing that the following items were purchased on May 3, 2021: Twenty five (25) Wolf Polyformance 300 Blackout 145 Grain FMJ (by the box); One (1) Red Army Standard 223 Remington 55 Grain FMJ (Case); One (1) OMPC 5.56x45 SS109 (M855) Steel Core 62 Grain FMJ (Can); Two (2) Magpul PMAG 300 Blackout GEN M3 Magazine 30 Round; One (1) ATI Schmeisser 223/5.56 AR15 Magazine-60 Round (G2 MLE); and One (1) Mission First AR-15 223/5.56 Magazine-30 Round Windowed. These items were sold to SAYEGH at address 11030 Seven Pines Drive; however, the items were shipped to SAYEGH at a different address, 1642 McCulloch Boulevard N #3042, Lake Havasu City, Arizona, 86403, listing telephone number (909) 201-6910.

4. On or about May 5, 2021, a POS withdrawal was made at Monoprice, Inc., electronics retailer, for approximately $2,693.74 to purchase a computer with a special computer graphics card. Based on records I received from Monoprice, the following item were purchased on May 5, 2021: one MSI GeForce RTX 3080 DirectX 12 RTX 3080 VENTUS 3X 10G OC 10GB 320-Bit GDDr6X PCI Express 4.0 HDCP Ready Video Card. The billing/shipping information provided for that order was for SAYEGH at 11030 Seven Pines Drive, with an email address of alexsayegh91@gmail.com, and phone number of (909) 285-8217.

5. On various dates transfers were made from SUBJECT ACCOUNT to Coinbase.com, for a total of $33,463.00, or 41% of all withdrawals. Coinbase.com is a known cryptocurrency exchange platform.

31. On August 17, 2021 I spoke with an investigator from Middlesex Bank who told me that on or about May 21, 2021 Middlesex Bank froze SUBJECT ACCOUNT due to

---

[6] I believe this e-mail address may be controlled or used by SAYEGH because it incorporates SAYEGH's own name and year of birth.

13

suspected PPP loan fraud. As of September 23, 2021, the SUBJECT ACCOUNT had a balance of $85,286.41.

### H. SAYEGH arrested by the San Bernardino Sheriff's Department

32. On July 29, 2021, the San Bernardino County Sheriff's Department ("SBCSD") arrested SAYEGH and charged him with violations of California Health and Safety code 11370.1(A) "Possession of a controlled substance while armed," California Penal Code 30605(A) "Illegally possessing an assault weapon," and California Penal Code 33410 "Possession of a silencer."

33. Based on my review of the SBCSD incident reports, I learned the following:

(a) The SBCSD was looking for an individual "R.F." in connection to an investigation unrelated to FBI's own investigation of SAYEGH. On July 29, 2021, SBSCD obtained and then executed a state search warrant at R.F's apartment.

(b) SAYEGH was at R.F's apartment during the search and was detained at the scene without incident. SBCSD investigators then seized approximately 18 firearms, ammunition, firearm accessories, body armor, EDD cards, and approximately 21 grams of cocaine from the apartment where SAYEGH and R.F. were found.[7]

(c) According to a San Bernardino County Sheriff's Department Crime Report, SAYEGH's address is listed as 11030 Seven Pines Drive, and his phone number is (909) 285-8217.

### V. CONCLUSION

34. The evidence set out in this affidavit demonstrates that there is probable cause to believe that in or about April 2021, SAYEGH knowingly submitted or caused others to submit fraudulent loan applications in the of the identity theft victim Whitehill and Credit Logistics, LLC, to financial institutions and the SBA, in an attempt to obtain funds authorized by the CARES Act. Based on the fraudulent loan applications submitted, SAYEGH received

---

[7] The investigation is ongoing and has not yet determined whether the items seized from R.F.'s residence are linked to records the FBI obtained for SAYEGH's firearm and ammunition purchases.

fraudulently obtained proceeds of a PPP loan in the amount of $108,610.82 into SUBJECT ACCOUNT.

35. Based on the foregoing, there is probable cause to believe that funds up to $108,610.82 in SUBJECT ACCOUNT constitute or are derived from proceeds traceable to one or more violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), and 18 U.S.C. § 1028A (Aggravated Identity Theft) and are therefore subject to seizure pursuant to 18 U.S.C. § 981(b), and forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984.

36. In addition, there is probable cause to believe that the SUBJECT FUNDS are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(7) and 21 U.S.C. § 853(f), because the funds would, in the event of conviction on the alleged underlying offenses, be subject to criminal forfeiture, and an order under section 21 U.S.C. § 853(e) would not be sufficient to assure the availability of the property for forfeiture.

STEPHEN HARRISON
Special Agent, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this ___ day of September, 2021.

HONORABLE PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE